This is a suit for damages to recover the sum of $673.00, representing the loss by plaintiff of his 1938 Pontiac Coupe which was damaged beyond repair, in an accident which occurred on Highway No. 7, just north of the line dividing the parishes of St. Tammany and Washington on December 13, 1945.
Petitioner alleges that on that day, at about 5:30 in the afternoon, he was travelling north on said highway and that on reaching the point mentioned he saw an automobile lying in a ditch on the west side; that he thereupon stopped his car on the cast side of the road, as far on the shoulder as the surface would permit, to go and investigate what had happened and to offer any assistance that might be necessary; that a large truck, heavily loaded, had also stopped on the same side of the highway and that he stopped his car about ten or fifteen steps south of that truck. He describes the highway as consisting of the usual eighteen feet pavement slab and a shoulder on each side, approximately six feet wide, the one on the east side sloping gradually towards the ditch, with numerous washed out places in it.
He then avers that the highway was wet and that the shoulder on the east side where he stopped was exceedingly slick and it was impossible for him to park his car entirely off the paved slab, but only the two left wheels of his car rested on the slab. That he left all the lights, front and tail, burning on his automobile and that its position and that of the truck on the highway were clearly visible to traffic approaching, with a clearance of twenty-two feet on the side for it to pass.
He alleges that after he had investigated the wrecked automobile lying in the ditch on the west side of the road, and while waiting in his car for the driver of that car to get in his automobile so that he could take him to Bogalusa, his car was struck from the rear by a truck belonging to the defendant C.A. Smith, being operated by a man named Fuller, acting at the moment within the course and scope of his employment by the said Smith. The impact knocked his car into the ditch on the east side of the road and the truck then ran into the other truck which was parked ahead of his car, turning it over.
He avers that there was a mist falling and the truck which ran into his car had no windshield wiper, that the windshield was cracked in several places and it was impossible for the driver to see through it; that it had but one headlight burning which was exceedingly dim and could not illuminate the roadway ahead. He further avers that Fuller, the driver of the truck in this defective condition, was running it at a dangerous and reckless rate of speed, approximately sixty miles per hour, and that the collision and resulting damage to his car was caused solely and only by the gross negligence of the said Fuller in the respects outlined, making his employer, the defendant herein, responsible for the damages that were caused to his car.
The defendant appeared in answer to the petition of the plaintiff and denied each item of negligence charged against the driver of his truck and then, assuming the position of a plaintiff in reconvention, he set out that the plaintiff, without any consideration for the perilous trap which he had created just beyond the crest of a steep hill, hidden in view from oncoming traffic approaching from the south, left his automobile on the highway, unattended and *Page 641 
without lights, flags or flares of any kind as a warning or signal of its presence. He alleged that his truck, which was heavily loaded was proceeding north at a moderate and safe rate of speed and that upon reaching the crest of the hill the driver found himself confronted with plaintiff's car blocking the highway and that although he did all that was within his power to avoid a collision he was not sufficiently warned of the danger that existed until it was too late for him to avoid the same. He then alleges that the collision and the resulting damage to his truck was caused by the negligent manner in which plaintiff had parked his car on the highway and left it there unattended although he had ample opportunity to have placed it in a less dangerous spot. He set out the damage to his truck as being its total loss; that it had a ceiling value of $985 which amount he should recover from the plaintiff, less the sum of $100, its salvage value.
In a supplemental petition defendant averred in the alternative, that in the event there is any degree of negligence shown to have existed on the part of the driver of his truck, that the proximate cause of the accident and the resulting damage was the contributory negligence of the plaintiff as set out in his reconventional demand.
There was a judgment in the lower court in favor of the plaintiff in the sum of $500, from which defendant has taken this appeal. Plaintiff did not answer the appeal so apparently he is satisfied with the amount of the award made by the trial judge.
[1] There is no great dispute as to the facts in the case and we believe that the trial judge was correct in reaching the conclusion that the accident was caused solely through the negligence of the driver of the defendant's truck.
It appears that plaintiff often engaged the defendant's truck for hauling tung nuts from his farm in Mississippi to a mill at Covington and on its return to Bogalusa it carried a load of tung nut meal to his place of business. That is what the truck was engaged in doing on that day and it was on its return trip from Covington late in the afternoon, when it was loaded with about 4000 lbs. of meal, that the accident occurred.
After the truck was loaded with the meal it left Covington and proceeded on its way north to Bogalusa. Plaintiff followed it in his automobile and passed it when it was maybe a mile or two outside of Covington. The weather was bad and a misty rain was falling constantly which kept the pavement wet and slippery. Plaintiff proceeded until he crossed the parish line and on reaching a point not far north of it, he noticed the car which had been wrecked and was lying in the ditch on the west side of the highway. A truck belonging to M. Marks Sons had stopped on the east side of the road and the two darkies who were in it had already gone to investigate the accident to the disabled car. Plaintiff stopped his car immediately back of the truck on the east side of the road and, as he says the shoulder appeared to him to be a bit soft, he did not park entirely off the paved slab. His estimate is that the left side of his car occupied about one foot or a foot and a half of the pavement. There is testimony to the effect that his car was parked almost on a line with the Marks truck, several paces back of it.
Plaintiff says that he then went to the assistance of the occupant of the wrecked automobile and found that he had been already helped out of his car by the darkies, so he offered to take him to Bogalusa. This party told plaintiff that he had been hunting and as he was about to enter his car he reminded him that he must have had his guns with him so the party went back to the wrecked car to get the gun and it was while plaintiff was waiting for him to return that the truck of the defendant, driven by Daniel Fuller, ran into it and then ran into the truck that was parked ahead of it turning it over. The blow to plaintiff's car seems to have turned it half way around and it rolled into the ditch, and then completely over-turned with all four wheels straight up in the air. Plaintiff is certain that the lights on his car were burning and he is certain also that there was ample room on the west side of his car for traffic to pass as in fact, several cars did pass while he was investigating the accident to the car that was in the ditch. *Page 642 
Plaintiff's version of the accident is corroborated by most of the other testimony in the case and in fact it is not seriously disputed by the driver of the truck except in two particulars. The latter claims that the automobile was parked three feet or more on the paved portion of the highway and he also contends that plaintiff stopped and parked it some 35 or 50 feet from the brow of the hill which made it impossible for him to see and observe it as he was coming over the hill in his truck because the lights on his truck, as he ascended the hill, projected upwards and did not begin to project downward again until it was too late for him to see the obstruction in the highway ahead of him. That is why he claims he did not see the automobile and the truck parked on the highway until he was within ten feet of the automobile.
We might well assume that plaintiff's car was parked as much as three feet on the east side of the paved slab on the highway, and yet, as just stated, that would have left enough clearance, as in fact it was shown that it did leave enough for traffic to pass safely by. The important difference between the testimony of the plaintiff and his witnesses and that of Fuller, the driver of the truck, is with regard to how far down the slope of the hill the plaintiff's car was parked for, we would say, that if it was not more than 35 or 40 feet from the crest of the hill there might be some good reason found in Fuller's explanation why he did not see it. Commenting on this point, we observe that the district judge after stating what Fuller's contention was, said that he was satisfied that plaintiff's car was parked 150 feet down the highway from the brow of the hill and that, we believe, is what a preponderance of the testimony shows. If it was at that distance that would seem to refute, in its entirety, the contention of Fuller that he could not have seen it until he was within ten fact of it.
Furthermore, considering the description we have of the truck Fuller was driving, and its condition, it may well be that he did not see the car until he was within ten feet of it for the testimony shows that the truck had had six years use and was in a rather dilapidated condition. Defendant himself admits that he had to keep it running and that he did so because it was impossible for him to get a truck to replace it at that time. Its more serious defects to be considered in connection with this accident were a cracked windshield and the poor visibility afforded by its headlights. A man who occupied the front seat next to Fuller the right, says that the windshield on his side was so cracked and blurred that he could not see through it at all and whilst Fuller says that on his side the windshield was clear there is testimony to the effect that that side was not much better than the other as there were cracks, in it also. It is shown definitely by the testimony of more than one witness that the truck had but one headlight burning and that that light was very dim.
[2] Considering the condition of this truck therefore, as well as the condition of the weather at the moment he was driving it on the highway, and considering also the fact that he was going over a hill, it became the obvious duty of the driver to have it under complete control so as to meet any eventuality on the highway. Fuller says that he was travelling twenty-five or thirty miles per hour but considering the force of the impact with which he struck plaintiff's car as well as the heavy loaded truck parked ahead of it, we agree with the trial judge that he must have been going at a greater rate of speed than he admits.
There certainly is enough proof of negligence on the part of the driver of the defendant truck to support the judgment of the lower court and therefore, for other reasons stated, it stands affirmed at the costs of the defendant, appellant herein.
ELLIS, J., absent. *Page 643